UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STANLEY RIMER, | Case No. 2:13-CV-1440 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| BRIAN SANDOVAL, et al., | |
| Defendant(s). | |

Presently before the court is defendants Dwight Neven, E.K. McDaniel, James Cox, Francis Dreesen, Richard Houke, Robert Owens, Jamie Rainone, Robert Bannister, Catherine Cortez Masto, Linda Adams, Doni Jennings, Cynthia Sablica, Brian Sandoval, Grant Lee, Efrain Lona, Tatiana Sowell, Tela Wilson, Cary Leavitt and Harold Wickham's motion for summary judgment. (Doc. #81). Plaintiff Stanley Rimer filed a response, (Doc. #125), and defendants filed a reply. (Doc. #132). Plaintiff also filed a motion to file a sur-reply to defendants' motion for summary judgment. (Doc. # 133).

I.     **Background**

This is a pro se prisoner civil rights action.  Plaintiff is an inmate currently housed at Lovelock Correctional Center ("LCC"). From June 2011 to January 2014 plaintiff was housed at High Desert State Prison ("HDSP"), and in his fourth amended complaint, plaintiff sues multiple defendants for deliberate indifference to his medical needs while incarcerated at HDSP. (Doc. #47).

Plaintiff's complaint alleges that he was diagnosed with an anxiety condition before he came to HDSP and was taking Vistaril to treat it. (Doc. #47 at 11–12). Once incarcerated, in June 2011, plaintiff was seen by defendant Lee, a psychiatrist, for reporting anxiety and hearing "voices of

James C. Mahan
U.S. District Judge

1    the lord at time when he was praying." (Doc. #81, Exh. A). Defendant Lee proscribed Risperdal
2    to add to his Vistaril. (*Id.*)

3    For about a year thereafter, plaintiff reported that he had not had an anxiety attack in a long
4    time, was "med compliant," and only used the Vistaril for "sedative purposes." (Doc. #81, Exh.
5    A). Between July and October 2012, plaintiff reported that he had been on Vistaril off and on for
6    four years and that in the last two to three months he had been experiencing ringing in his ears and
7    high blood pressure. (*Id.*)

8    Consequently, on October 30, 2012, defendant Lee discontinued both the Risperdal and
9    Vistaril prescriptions. (*Id.*) Thereafter, plaintiff reported increased anxiety attacks. Medical
10   personnel discussed coping techniques with plaintiff, but he refused to try them. Plaintiff was then
11   referred for a mental health evaluation, and defendant Lee reviewed plaintiff's chart. (*Id.*)
12   Defendant Lee did not find grounds to reissue a prescription and told plaintiff he would not
13   prescribe Vistaril because there "is no clinical picture of anxiety in your case." (*Id.*)

14   Plaintiff also complained that he was unable to sleep due to the anxiety. (*Id.*) However, his
15   cellmate reported that the plaintiff snores and "sleeps all night." (*Id.*) Nonetheless, on February
16   20, 2013, Defendant Lee saw plaintiff again. (*Id.*) After discussing whether plaintiff was
17   experiencing psychological problems, plaintiff once again requested Vistaril but agreed to take
18   Celexa instead. (*Id.*)

19   Plaintiff's complaint also alleges that defendant Rainone, a caseworker who reviewed
20   plaintiff's grievances, transferred plaintiff to a different protective segregation unit in retaliation
21   for plaintiff filing a lawsuit against her in relation to these events. (Doc. #47 at 21).

22   **II.    Legal Standard**

23   The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
24   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
25   show that "there is no genuine issue as to any material fact and that the movant is entitled to a
26   judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is
27   "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
28   323–24 (1986).

James C. Mahan
U.S. District Judge

1   In determining summary judgment, a court applies a burden-shifting analysis. "When the

2   party moving for summary judgment would bear the burden of proof at trial, it must come forward

3   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

4   trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine

5   issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests.*,

6   Inc., 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

7   In contrast, when the nonmoving party bears the burden of proving the claim or defense,

8   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

9   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed

10   to make a showing sufficient to establish an element essential to that party's case on which that

11   party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving

12   party fails to meet its initial burden, summary judgment must be denied and the court need not

13   consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60

14   (1970).

15   If the moving party satisfies its initial burden, the burden then shifts to the opposing party

16   to establish that a genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith*

17   *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

18   party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

19   claimed factual

20   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

21   trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

22   However, the nonmoving party cannot avoid summary judgment by relying solely on

23   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

24   1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

25   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

26   for trial. *See Celotex Corp.*, 477 U.S. at 324.

27   At summary judgment, a court's function is not to weigh the evidence and determine the

28   truth, but to determine whether there is a genuine issue for trial. See *Anderson v. Liberty Lobby,*

**James C. Mahan**
**U.S. District Judge**

- 3 -

1   *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable

2   inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

3   merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

4   249–50.

5   **III.    Discussion**

6          *a.   Motion to file sur-reply*

7          Plaintiff requested to file an unauthorized sur-reply to the motion for summary judgment

8   (doc. # 133), which defendants oppose. (Doc. #134). The local rules provide only for a response

9   and a reply to a motion. *See* LR 7-2(b) (providing for responses); LR 7-2(c) (providing for replies).

10  There is no provision permitting a sur-reply absent the court's approval. Defendant's motion for

11  summary judgment was only thirteen pages. This court previously ordered plaintiff to file a

12  response that complies with the page limit provided by the local rules and struck defendant's first

13  response to the motion for summary judgment for its excessive length. (Doc. # 102). Accordingly,

14  the court finds no good cause to grant plaintiff's request. Plaintiff's motion to file a sur-reply is

15  denied.

16         *b.   Eighth Amendment claims against all defendants*

17         In order to state a claim for relief under the Eighth Amendment based on a deliberate

18  indifference to serious medical needs, a plaintiff must present factual allegations tending to

19  establish that the defendant official knew of and disregarded an excessive risk to inmate health or

20  safety. *See, e.g., Simmons v. Navajo County,* 609 F.3d 1011, 1017-18 (9th Cir. 2010). The official

21  must be aware of the facts from which the inference of an excessive risk to inmate health or safety

22  could be drawn and must draw the inference. *Id.* In other words, a plaintiff must show that the

23  official was "(a) subjectively aware of the serious medical need and (b) failed adequately to

24  respond." *Id.* (quoting prior authority, with emphasis in original). Medical misdiagnosis,

25  differences in medical opinion, medical malpractice, and negligence do not amount to deliberate

26  indifference. *See, e.g., McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other*

27  *grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997)(*en banc*); *Sanchez v. Vild*, 891

28  F.2d 240, 241-42 (9th Cir. 1989).

James C. Mahan
U.S. District Judge

Prison authorities have wide discretion regarding the nature and extent of medical treatment provided to prisoners. *Snow v. Gladden*, 338 F.2d 999 (9th Cir. 1964) (*citing Weller v. Dickson*, 314 F.2d 598, 602 (9th Cir. 1963)). The crux of the complaint revolves around a disagreement regarding the medical treatment provided by defendant Lee. Additionally, based on the allegations, plaintiff wrote notices to supervising prison officials and informed them about the denial of treatment. (Doc. #47).

Plaintiff took Vistaril and Risperdal before he went to HDSP. (Doc. #47). While on Vistaril he claimed to use it only for sedative purposes. (*Id.*) Defendant Lee took plaintiff off the medications because plaintiff was experiencing high blood pressure and ringing in his ears. (*Id.*) Defendant then claimed to have anxiety attacks and said he needed the Vistaril. (*Id.*)

The evidence shows that defendant Lee physically examined and monitored plaintiff on several occasions over the relevant time period in response to plaintiff's complaints. Defendant Lee did not find that plaintiff demonstrated clinical anxiety. Far from demonstrating deliberate indifference toward the plaintiff's needs, defendant Lee was willing to prescribe Celexa for plaintiff's depression. (*Id.*) Defendant Lee saw plaintiff as a patient on a number of occasions.

Although he did not observe any clinical evidence of anxiety, defendant Lee and his staff offered plaintiff alternative coping mechanisms. Plaintiff refused to try them. Defendant Lee relied on his medical judgment to determine appropriate treatment for plaintiff. Plaintiff has presented no evidence that defendant Lee and assisting personnel's decisions or actions fell below the applicable standards of care.

At most, plaintiff has raised a difference of medical opinion regarding his treatment. Plaintiff was clearly receiving ongoing care for his mental health. (Doc. #81 Exh. A). When plaintiff kited, he was often seen either by defendant Wilson or defendant Lee. (*Id.*) Plaintiff presents no evidence suggesting that the decision to deny the Vistaril was based on anything other than the sound exercise of medical judgment. This difference of opinion regarding the appropriate course of treatment does not amount to a deliberate indifference to serious medical needs, and plaintiff's claim fails as a matter of law. *See Sanchez*, 891 F.2d at 242.

. . .

James C. Mahan
U.S. District Judge

1

*c. First Amendment claim against defendant Lee*

2     Plaintiff claims that defendant Lee violated his First Amendment right to freedom of

3 religion because he prescribed Risperal when the plaintiff told Lee that he heard God during prayer

4 or meditation.

5     Prisoners seeking relief under § 1983 must exhaust all available administrative remedies

6 prior to bringing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to

7 prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

8 any jail, prison, or other correctional facility until such administrative remedies as are available

9 are exhausted."); *Jones v. Bock*, 549 U.S. 199, 212 (2007) (citing *Porter v. Nussle*, 534 U.S. 516,

10 524 (2002) ("There is no question that exhaustion is mandatory under the PLRA and that

11 unexhausted claims cannot be brought in court.")). This requirement is mandatory regardless of

12 the relief sought. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

13     A prison inmate in Nevada satisfies the administrative exhaustion requirement by

14 following the procedures set forth in NDOC Administrative Regulation 740. *Hall v. Skolnik*, No.

15 2:10-CV-00054-JCM, 2012 WL 993726, at *3 (D. Nev. Mar. 23, 2012). This regulation expressly

16 mandates that inmates "shall file an informal grievance" within six months "if the issue involves

17 personal property damage or loss, personal injury, medical claims or any other tort claims,

18 including civil rights claims" or within ten days "if the issue involves any other issues within the

19 authority and control of the [NDOC] including, but not limited to, . . . food." *Id.*

20     It further warns that "[f]ailure by the inmate to submit a proper Informal Grievance form"

21 within this time frame "shall constitute abandonment" of the inmate's right to pursue resolution of

22 that claim at any level of the inmate grievance procedure. *Id.* Thus, an inmate in the custody of

23 the NDOC who fails to timely file a proper informal grievance has abandoned his right to pursue

24 resolution of any such claims through the inmate grievance procedure. *Id.*

25     Defendants have established that plaintiff failed to exhaust his administrative remedies.

26 Plaintiff failed to file a proper informal grievance during the required time frame. Plaintiff's

27 grievance history demonstrates that, despite his routine filing practices, at no point in time did

28 defendant raise concerns about what effect his medication may have on his religious practices.

**James C. Mahan**
**U.S. District Judge**

(Doc. #81, Exh. 2). Because he failed to adhere to the inmate grievance procedure, his claim is dismissed for failure to exhaust administrative remedies.

### d.   First Amendment claim against defendant Rainone

Plaintiff claims that defendant Rainone transferred plaintiff to another protective segregation unit in retaliation for plaintiff filing a lawsuit against her. (Doc. #47). Defendants do not respond substantively to plaintiff's claim but note that plaintiff has raised a similar version of this issue in the Eighth Judicial District Court for Clark County, Nevada, Case No. A-13-693728-C. (Doc. #81, Exh. D). The state district court dismissed plaintiff's complaint for failure to state a claim and failure to exhaust administrative remedies. That dismissal was recently upheld by the Nevada Supreme Court. (Doc. #132, Exh. C).

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

As a threshold matter, it appears that defendant did file grievances with respect to his claim regarding defendant Rainone. (Doc. #81, Exh. 2 at 68). Nonetheless, plaintiff does not assert a viable claim for retaliation. Plaintiff was not moved *into* a protective segregation unit upon initiating litigation against defendant Rainone. Rather, he was merely moved from one protective segregation unit to another protective segregation unit. The record indicates that both units are in the same custody and same class level and both units afford plaintiff identical privileges. (*Id.*)

James C. Mahan
U.S. District Judge

1    Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that

2    defendant Rainone impeded upon defendant's First Amendment rights without supporting factual

3    data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

4    Plaintiff has not shown any indication that a transfer between units adversely impacted or

5    chilled his First Amendment rights. Therefore, defendant's motion for summary judgment with

6    respect to plaintiff's First Amendment claim against defendant Rainone is granted.

7    The court notes that defendants also assert that they are entitled to qualified immunity. The

8    court need not address this defense at this time, since plaintiff's claims fail as a matter of law.

9    **IV.    Conclusion**

10    Accordingly,

11    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED defendants' motion for

12    summary judgment (doc. # 81) be, and the same hereby is, GRANTED. Defendants are instructed

13    to submit a proposed judgment within seven (7) days of the issuance of this order.

14    IT IS FURTHER ORDERED that plaintiff's motion to file a sur-reply (doc. #133) be, and

15    the same hereby is, DENIED.

16    DATED February 18, 2016.

17

18    _____
      UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**